UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Barbara Staples, as Trustee for the Next-of-Kin of Daniel Staples, deceased,<br><br>   Plaintiff,<br><br>vs.<br><br>Bradley C. Thaemert, M.D. and the Surgical Institute of South Dakota, a South Dakota corporation,<br><br>   Defendants. | Case No.:<br><br>**COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL** |

---

Plaintiff Barbara Staples, as the Trustee for the Next-of-Kin of Daniel Staples, for her cause of action against the above-named defendants, states and alleges on information and belief as follows:

## PARTIES, JURISDICTION & VENUE

### I.

At all relevant times, plaintiff Barbara Staples, and her deceased husband, Daniel Staples, were husband and wife, both residing in the State of Minnesota. On March 9, 2007, plaintiff's decedent, Daniel Staples, died as a result of defendant Dr. Thaemert's medical negligence.

### II.

Plaintiff Barbara Staples was duly appointed trustee by order of the District Court, Ramsey County, dated the 20th day of January, 2009, to prosecute an action for the wrongful death of her husband, Daniel Staples, for the benefit of the next of kin pursuant to the Minnesota Wrongful Death Statute, Minn. Stat. § 573.02 et. seq. Plaintiff Barbara Staples continues to reside in Minnesota, at 3230 Garnet Drive, in Slayton, Murray County, Minnesota. A copy of the order appointing plaintiff Trustee is attached to the Complaint at Exhibit A.

80534737.1

### III.

At all relevant times, and on information and belief, Defendant Bradley C. Thaemert, M.D. has been a resident of the State of South Dakota, and currently resides in Sioux Falls, Lincoln County, South Dakota. At all relevant times, Defendant Bradley C. Thaemert, M.D. has been licensed to practice medicine in the State of Minnesota. Upon information and belief, Defendant Bradley C. Thaemert, M.D. holds Minnesota medical license number 41537.

### IV.

At all relevant times, Defendant Surgical Institute of South Dakota was a corporation organized and existing under the laws of the State of South Dakota, with its principal place of business at 911 East 20th Street, Suite 800, Sioux Falls, Minnehaha County, South Dakota. Upon information and belief, Defendant Surgical Institute of South Dakota employed Defendant Thaemert and other surgeons. Upon information and belief, at all relevant times Defendant Thaemert was a principal, agent and/or employee of Defendant Surgical Institute of South Dakota.

### V.

Defendant Thaemert is licensed to practice medicine in both Minnesota and South Dakota, and he held himself out to the public to be competent, careful and experienced in the specialty of surgery. Defendants are in the business of conducting surgery and providing follow-up medical treatment to patients residing in Minnesota, South Dakota and Iowa.

### VI.

This action is properly before the Court because there exists complete diversity of citizenship between plaintiff and all defendants. In addition, the amount in controversy claimed by plaintiff, exclusive of interest and costs, exceeds Seventy-five Thousand Dollars ($75,000). As a result, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

VII.

Defendant Dr. Thaemert is subject to the *in personam* jurisdiction of this Court, and venue is proper herein pursuant to 28 U.S.C. § 1391, because defendant holds a license to practice medicine in the State of Minnesota, did and/or does practice medicine within the State of Minnesota, and committed a tort in whole or in part in Minnesota against plaintiff, as more fully set forth herein.

VIII.

Defendant Surgical Institute of South Dakota is subject to the *in personam* jurisdiction of this Court, and venue is proper herein pursuant to 28 U.S.C. § 1391, because defendant advertises in the State of Minnesota, did and/or does provide medical treatment and/or medical advice within the State of Minnesota, and committed a tort in whole or in part in Minnesota against plaintiff, as more fully set forth herein.

**FACTUAL BACKGROUND**

IX.

At all relevant times, Defendant Thaemert was acting within the scope of his employment and/or professional relationship with Defendant Surgical Institute of South Dakota.

X.

At all relevant times, Defendant Thaemert and Defendant Surgical Institute of South Dakota had a duty to comply with accepted standards of practice in providing medical care and treatment to Daniel Staples.

XI.

On February 16, 2007, Daniel Staples, age 52, underwent a laproscopic bariatric surgery under general anesthesia at Avera Medical Center in Sioux Falls, South Dakota.

## XII.

Defendant Thaemert performed the laproscopic Vanguard gastric band procedure on Mr. Staples.

## XIII.

Defendant Thaemert's operative report states:

> "Patient had an NG tube placement for decompression. After we placed our first stitch from the greater curvature just below the GE junction, it was a tough stitch at the GE junction, and after taking the stitch, the NG was attempted to remove, it would not remove. It was obvious that we grabbed a little bit of NT tube with our handle stitch. We then cut the stitch and removed the stitching and were able to pull the NG tube out. <u>There was a serosal tear in the greater curvature of the stomach</u> when we had cut the stitch out that we oversewed with a figured-of-eight stitch. We then restitched 3 interrupted stitches over the band, appeared to give good coverage of the band, was then locked and the buckle was placed on the right crus of the diaphragm and a gastric digastric stitch was taken below the gastric band from the greater curvature to the lesser curvature."

## XIV.

Over the next three days, four phone calls were made from the Staples home in Minnesota to Defendant Thaemert's office at the Defendant Surgical Institute of South Dakota in Sioux Falls, South Dakota. On February 16, 2007, medical records confirm a 7:40 p.m. phone call from Barbara Staples. Notes show that she asked: "Please call, post op patient in pain."

## XV.

Defendant Thaemert and Defendant Surgical Institute of South Dakota knew or should have known that symptoms of abdominal pain the evening of surgery may be indicative of a perforation. Despite this knowledge, Defendant Thaemert and/or Defendant Surgical Institute of South Dakota chose not to have Mr. Staples go to the hospital for evaluation.

## XVI.

On February 17, 2007 at 11:19 a.m., Daniel Staples called Defendant Thaemert at his office at the Defendant Surgical Institute of South Dakota. The medical record reads "Had a procedure yesterday and is miserable." Again, Defendant Thaemert and/or Defendant Surgical Institute of South Dakota chose not to have Mr. Staples go to the hospital for evaluation.

## XVII.

Later that same day, February 17, 2007 at 9:25 p.m., Barbara Staples called again, as documented by defendants' record: "Had surgery yesterday, has severe pain in belly." Once again, Defendant Thaemert and/or Defendant Surgical Institute of South Dakota chose not to order care of any kind to Mr. Staples, or ask him to go to the hospital for evaluation.

## XVIII.

Finally, on February 18, 2007 at 5:05 p.m., Barbara Staples placed the fourth call. Defendants' records document: "Severe pain in lower abdomen." After this fourth call, Mrs. Staples was finally advised to take her husband to the hospital.

## XIX.

Daniel Staples was admitted to the Avera McKennan Hospital on the evening of February 18, 2007. Dr. John Travnicek noted Mr. Staples abdomen was distended and tender throughout. Bowel sounds were decreased. A CT of the abdomen was done and showed large amounts of pneumoperitoneum, pleural effusions and atelectasis. Dr. Travnicek noted: "Patient is sick and not oxygenating well. We placed him on supplemental oxygen and subsequently upgraded him from nasal canula to non-rebreather just to get his sats into the mid-90's. <u>This patient seems to have a severe postoperative complication or problem</u>..." (emphasis added).

## XX.

According to Dr. Travnicek's records, the physician on-call for Defendant Thaemert, Dr.

Ellison Kalda, was called and came to the hospital quickly. Following an evaluation of Mr. Staples, Dr. Kalda promptly took Mr. Staples to the operating room for further surgical diagnostic and therapeutic modalities.

### XXI.

Dr. Kalda conducted a history and physical exam and noted that Mr. Staples had undergone laparoscopic banding about 48 hours before. Dr. Kalda noted: "He has had really more abdominal pain than one would expect. I talked with his wife tonight. She described really an inordinate amount of discomfort for this." Dr. Kalda noted "Patient appears to be a profoundly unwell man . . ." with "markedly diminished" oxygen saturation levels. His exam of Mr. Staples' abdomen showed "jar tenderness indicative of peritonitis." Dr. Kalda's impression was: "Intra-abdominal catastrophe, probably perforated viscus." Dr. Kalda took Mr. Staples to surgery immediately.

### XXII.

Dr. Kalda performed a laparotomy. His operative report states:

> We could see where the band was. Also could see there was more fibrinopurulent exudate, bilious secretions here. After a fair amount of time sucking things out, trying to identify this, we could find the area of the band. . . . There had been sutures on this, some of which were just sitting there. There was marked amount of inflammatory tissue in and around the area of this band. The band was removed. . . . We could find what looked to be hole, initially I thought was right at the GE junction. There was marked amount of inflammation in the area. I did not thing we could trust any sort of local procedure to hold. Everything was inflamed.

### XXIII.

Daniel Staples was subjected to several additional surgeries in the following weeks. Mr. Staples remained hospitalized in critical condition through the time of his death on March 9, 2007.

## XXIV.

An autopsy was performed on March 12, 2007. The autopsy report states as follows:

> The cause of death, therefore, represents extensive, continuing complications secondary to a partially controlled gastric perforation occurring as a sequela to gastric banding for underlying obesity. The manner of death is somewhat problematic. If gastric perforation is a sufficiently recognized complication of the gastric banding, then potentially the manner of death could be natural with the ultimate underlying cause of death as obesity. Otherwise, the manner could be ascribed to accidental secondary to the gastric perforation.

## XXV.

Before and during surgery, Defendant Thaemert knew or should have known that it was below accepted standards of medical practice to suture the stomach before removing the nasogastric tube during a laparoscopic gastric banding surgery.

## XXVI.

Before and during surgery, Defendant Thaemert knew or should have known that Mr. Staples would be at greater risk for a gastric perforation if the nasogastric tube was not removed before suturing the stomach.

## XXVII.

Before and during the surgery, Defendant Thaemert knew or should have known that the standard of care required a post-operative gastrointestinal swallow. This test is routinely done following laproscopic gastric banding surgery, before patients are discharged. A post-operative gastrointestinal swallow was especially necessary in this instance, as Defendant Thaemert knew and documented that he had caused a serosal tear in the greater curvature of Mr. Staples' stomach during the course of the surgery. Had gastrointestinal swallow test been done, it would have shown that Mr. Staples suffered a gastric perforation during the surgery done by Defendant Thaemert. Defendant Thaemert chose not to perform a gastrointestinal study.

## XXVIII.

Before and during the surgery, defendants knew or should have known that a gastric perforation needs to be promptly detected and treated in a timely manner.

## XXIX.

Before and during the surgery, defendants knew or should have known that failure to detect and treat a gastric perforation in a timely manner may result in serious, permanent injury or death to a patient.

## XXX.

Before and during the surgery, Defendant Thaemert knew or should have known that suturing the NG tube to the stomach was a complication during surgery that required Mr. Staples be observed in the hospital, at a minimum overnight.

## XXXI.

Defendants knew or should have known that if gastric perforation is detected in a timely manner, it can be safely repaired with a good outcome.

## XXXII.

Defendants knew or should have known that gastric perforation is a very serious complication, and that when left untreated, it is life-threatening.

## XXXIII.

Defendants knew or should have known that the longer a perforation goes undiagnosed, the worse a patient's prognosis becomes.

## XXXIV.

Defendants chose to send Mr. Staples home the same day he underwent surgery, on February 16, 2007, despite knowing he suffered a surgical complication that put Mr. Staples at an increased risk of serious injury or death.

## XXXV.

If Daniel Staples' gastric perforation had been detected in a timely manner, treatment would have been provided. Had diagnosis and treatment been provided in a timely manner, more likely than not, Daniel Staples would have survived and made a complete recovery.

## XXXVI.

Defendant Thaemert and Defendant Surgical Institute of South Dakota departed from accepted standards of medical practice in their care and treatment of Mr. Staples. Their negligence included, but was not limited to, the following:

A. Decision not to remove the nasogastric tube before stitching the stomach during the laporoscopic gastric banding surgery;

B. Decision not to properly recognize a gastric perforation during surgery;

C. Decision not to order a gastrointestinal swallow following surgery;

D. Decision not to properly monitor Mr. Staples in a hospital, at least overnight, following the surgery;

E. Decision not to properly respond to repeated telephone calls from Mr. Staples and his wife in the days following the surgery;

F. Other acts and omissions.

## XXXVII.

Defendants' negligence was a direct and substantial cause of the death of Daniel Staples.

## XXXVIII.

As a direct and proximate cause of Defendants' negligence, Daniel Staples required extensive medical and hospital care in a sum in excess of Seventy-five Thousand Dollars ($75,000.00).

## XXXIX.

As a direct and proximate cause of Defendants' negligence, Daniel Staples' next-of-kin have suffered, and in the future will suffer, the loss of past and future income, benefits and household services with a present value in excess of Seventy-five Thousand Dollars ($75,000.00).

## XL.

As a direct and proximate cause of Defendants' negligence, Daniel Staples' next-of-kin have suffered, and in the future will suffer, the loss of the advice, counsel, comfort, protection, support and companionship of the decedent.

## XLI.

As a further direct and proximate cause of Defendants' negligence, the next-of-kin of Daniel Staples' have incurred funeral and burial expenses associated with the death of Daniel Staples.

WHEREFORE, Plaintiff Barbara Staples, as Trustee for the Next-of-Kin of Daniel Staples, prays for judgment against Defendants in an amount in excess of Seventy-five Thousand Dollars ($75,000.00), together with costs and disbursements incurred herein, prejudgment interest, and such other and further relief as the Court shall deem appropriate.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all claims and issues so triable.

DATED:  February 5, 2009                ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: *Genevieve Zimmerman*
Chris Messerly (MN #177039)
Genevieve M. Zimmerman (MN #330292)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015
612-349-8500

**ATTORNEYS FOR PLAINTIFF**

## ACKNOWLEDGMENT REQUIRED BY
## MINN. § 549.21, SUBD. 2

The undersigned hereby acknowledges that, pursuant to Minn. Stat. § 549.21, subd. 2, costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing part or parties in this litigation if the Court should find the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

DATED: February 5, 2009

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: *Genevieve Zimmerman*
Chris Messerly (MN #177039)
Genevieve M. Zimmerman (MN #330292)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
612-349-8500

**ATTORNEYS FOR PLAINTIFF**